# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                          No. 21-CR-1725 MV

MARC CLARK

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

!     THIS MATTER is before the Court on the United States' Motion to Compel Disclosure of Psychological Assessment. Doc. 64. Defendant Marc Clark filed a Response, Doc. 66, and the government filed a Reply. Doc. 67. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and must be denied.

## BACKGROUND

On August 3, 2023, Mr. Clark pled guilty to a single count Indictment charging him with Second Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111. Doc. 53. Prior to Mr. Clark's guilty plea, defense counsel determined that a psychological evaluation was an "indispensable component of [Mr. Clark's] trial strategy." Doc. 66 at 3. Defense counsel hired an expert who conducted a psychological evaluation on Mr. Clark so that counsel could determine whether a certain theory of defense would be appropriate. *Id.* at 6. The expert prepared a report and provided it to defense counsel, who used the report to advise Mr. Clark as to his options. Defense counsel has represented that the report served its purpose, namely, to assist counsel in advising Mr. Clark, and he has no intention of introducing the report at sentencing.

On August 22, 2024, having reviewed the Presentence Investigation Report and finding that an evaluation would assist this Court in determining Mr. Clark's sentence, this Court ordered Dr. Julie Brovko to complete a comprehensive psychological evaluation of Mr. Clark. Doc. 63 at 2. In the order, the Court specified that "the evaluation shall include . . . a review of . . . any other assessments which may have been previously completed. *Id.* at 1. Upon reading this Court's order, counsel for the government contacted Dr. Brovko and asked her if the psychological evaluation already conducted on Mr. Clark at the behest of his attorney would be helpful to completing her evaluation. Doc. 64 at 1. She replied that it would be helpful. *Id.* Counsel for the government then requested that defense counsel send the previous evaluation to her, but defense counsel refused, stating that the defendant had not consented to the report being released and that it was covered by the attorney work-product privilege. *Id.* The government now moves for an order commanding defense counsel to disclose to Dr. Brovko and the government the mental health assessment already conducted on Mr. Clark as part of this case. *Id.*

## LEGAL STANDARD

The Supreme Court has recognized a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles,* 422 U.S. 225, 238 (1975). The attorney work-product privilege is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). Thus, "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975). Importantly, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system." *Id.* As such, the Supreme Court has held that "it is therefore

necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238-39.

Similarly, attorney-client communications are privileged. *Trammel v. United States,* 445 U.S. 40, 51 (1980). The privilege is intended "encourage clients to make full disclosure to their attorneys." *Fisher v. United States,* 425 U.S. 391, 403 (1976). However, the privilege is not absolute. Instead, the attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings,* 616 F.3d 1172, 1182 (10th Cir. 2010). Furthermore, the presence of a third party will not necessarily destroy the attorney-client privilege if the third-party is the attorney's or client's agent. *Weatherford v. Bursey,* 429 U.S. 545, 554 n. 4 (1977) (attorney-client communications in the presence of a third party not the agent of either are generally not protected by the privilege).

## DISCUSSION

The government seeks an order compelling defense counsel to disclose the prior report conducted by a defense expert. Because the Court finds that the report is covered by both the attorney work-product privilege and the attorney-client communication privilege, the Motion must be denied.

First, although the Court's order specifies that Dr. Brovko shall review any prior reports, this statement does not serve as a blanket order requiring the disclosure of all privileged documents and reports that may be useful to Dr. Brovko. Instead, the order assumes that Dr. Brovko shall review any reports that are available, not privileged, and not otherwise protected from disclosure. Here, the defense expert's prior report falls squarely within the attorney work-product privilege, as extended to agents of attorneys in *Nobles,* 422 U.S. at 238. Defense counsel, believing that a

psychological evaluation would be an "indispensable component" of trial strategy, hired a psychological expert who became a part of the defense team. Doc. 66 at 3. Defense counsel "needed the assistance of an expert to assess the merit of going to trial using a certain theory of defense." *Id.* Thus, the report was authored by an agent of defense counsel in anticipation of litigation, with the specific aim of answering whether a particular trial strategy was a feasible option for Mr. Clark. As such, the report constitutes attorney work-product. *Nobles,* 422 U.S. at 238 (the attorney work-product privilege covers materials prepared by an attorney in anticipation of litigation). To compel disclosure would violate the very purpose of the privilege, which is to "shelter[] the mental processes of the attorney" and "provid[e] a privileged area within which he can analyze and prepare his client's case." *Id.*; *see also Hickman,* 329 U.S. at 510 (noting the need to allow lawyers to work with a certain degree of privacy). Importantly, defense counsel does not intend to introduce the report at sentencing, nor raise the issue of Mr. Clark's mental health. The privilege has therefore not been waived and the Court will not compel disclosure.

Next, the report also falls within the scope of the attorney-client privilege. Although Mr. Clark made his statements to a third party, as discussed above, this third party was an agent of his attorney who was hired to assist counsel in providing legal advice. Additionally, the purpose of the report was to determine whether to proceed under a certain theory of defense, thus Mr. Clark's statements to the expert were "made in order to obtain legal assistance from the attorney in his capacity as a legal advisor" and are protected by the attorney-client privilege. *In re Grand Jury Proc.,* 616 F.3d at 1182; *Weatherford,* 429 U.S. at 554 n. 4. As the Supreme Court has noted, the attorney-client privilege is intended to encourage clients to make full and honest disclosures to their attorneys so that their attorneys can properly advise them. *Fisher,* 425 U.S. at 403. In order to correctly assess whether a particular strategy would be appropriate for Mr. Clark, counsel

required that Mr. Clark fully and honestly participate in the prior evaluation. If the Court were to compel disclosure of the report, it would risk breaking the trust between Mr. Clark and defense counsel and would set a dangerous precedent for defense attorneys moving forward. Without the ability to explore the feasibility of different trial strategies while not risking premature disclosure, defense attorneys would be hampered in their ability to effectively represent their clients and establish trusting relationships with them. Such concerns underlay the very existence of the attorney-client privilege, thus the Court must deny the government's request for compelled disclosure.

The government's arguments to the contrary are unavailing. First, the government cites to *In re Grand Jury Proc.,* 616 F.3d 1172 (10th Cir. 2010) for the proposition that it is not seeking any privileged communications because the communications were made to a third-party. This generalization, however, ignores longstanding precedent that the attorney-client privilege may cover communications made to or in the presence of agents of the client or the attorney. *Upjohn Co. v. United States,* 449 U.S. 383, 391-92 (1981) (communications between counsel and employees of corporate client were covered by attorney-client privilege). In fact, district courts applying the rationale of *Upjohn,* "have held that confidential communications between a party's counsel and a non-testifying expert or consultant, hired in anticipation of litigation, are protected by the attorney-client privilege." *Roe v. Catholic Health Initiatives Colorado,* 281 F.R.D. 632, 637 (D. Colo. 2012); *In re Grand Jury Subpoenas Dated March 9, 2001,* 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) (confidential communications between an attorney and a non-testifying expert "may be protected from disclosure if the communications are made on behalf of the client for the purpose of obtaining legal advice"); *United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (attorney-client privilege may cover "communications

made to agents of an attorney . . . hired to assist in the rendition of legal services"). The government's blanket statement that it is entitled to the report because "the United States does not seek, for itself, or for Dr. Brovko, any communications between Defendant and defense counsel," Doc. 64 at 2, is thus an unconvincing and oversimplified view of the scope of the attorney-client privilege.

The government further argues that the expert hired by defense counsel was not acting as counsel's agent and the report is therefore not covered by either the work-product privilege or the attorney-client privilege. In support of this argument, the government relies on *Sines v. Darlin' Ingredients, Inc.,* No. 21-CV-26, 2022 WL 1554824, at *16 (D.N.M. May 17, 2022) (J. Browning.) In *Sines,* the court held that for the purposes of Rule 45 of the Federal Rules of Civil Procedure, "an expert is a party's agent if the expert is subject to the control of the party who hires the expert" and further stated that "retaining an expert to create a report is not sufficient to treat the expert as the party's agent." 2022 WL 1554824 at *16. Accordingly, the government asserts that an expert only becomes the agent of a party "when a party discloses an expert report and gives notice it will call the expert to testify consistent with that report." Doc. 67 at 2. Since defense counsel has not formerly adopted the expert's opinions, the government argues that the expert was not acting as an agent of defense counsel.

The government's interpretation of *Sines* is misguided. The *Sines* court discussed whether an expert was an agent of a party within the context of determining whether a party has standing to quash a Rule 45 subpoena. Under Rule 45, the court found that "in some situations, an expert witness is a party's agent and should not be subject to a non-party subpoena" and additionally held that in such situations a party has standing to quash a Rule 45 subpoena served on the expert. 2022 WL 1554824, at *6. Interestingly, while the *Sines* court made the above statements describing the

limits of the expert-party relationship, the court also found that the plaintiffs, who had not yet formerly disclosed the expert in question or given notice that it would call the expert as a witness, had standing to quash the defendant's Rule 45 subpoena which asked the expert to disclose his reports. Thus, the *Sines* court implicitly found that the expert, despite not having yet been formally disclosed or noticed, was an agent of the plaintiffs who had hired him. The government's expansive reading of *Sines* as holding that an expert cannot be an agent of a party unless the party has formally disclosed the report and adopted its findings is therefore unsupported.

Even if the government's reading of *Sines* were correct, the *Sines* decision is inapposite. In the instant case, unlike the expert in *Sines,* the defense expert was not merely hired to write a factual report, but was asked to write a report with the specific aim of assisting counsel in determining whether or not to advise his client to pursue a particular theory of defense. As such, the expert was acting as an agent of defense counsel and the report is privileged. *See Andritz Sprout-Bauer, Inc. v. Beazer, East, Inc.,* 174 F.R.D. 609, 632 (M.D. Pa. 1997) ("The [attorney-client] privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests."); *Cf. Phelps Dodge Refining Corp.,* 852 F. Supp. at 161 (outside consultants hired by defendants to conduct environmental studies were not encompassed by the attorney-client privilege where their function was *not* to put information into a useable form for their attorneys to render legal advice, but merely to collect information not obtainable directly from defendants). The government cannot prevail on its Motion simply because the defense did not ultimately decide to pursue the trial strategy in question or have the expert testify. To hold otherwise would be to completely hamper our adversarial legal system, as defense attorneys would be required to disclose every explored, but ultimately discarded, defense strategy ahead of trial and place their clients at an unfair disadvantage.

Lastly, the Court notes that, while Dr. Brovko has reported that access to the prior report would be helpful, Doc. 64 at 1, she has in no way indicated that she is unable to complete an assessment without the prior evaluation. This undercuts the government's argument that the Court must either compel disclosure or rescind its order for an evaluation entirely. Dr. Brovko is still capable of completing her evaluation and the Court will not rescind its prior order.

CONCLUSION

The prior psychological evaluation is covered by both the attorney work-product privilege as well as the attorney-client privilege. Because the defense does not intend to introduce the prior report or make Mr. Clark's mental health an issue at sentencing, the Court will not compel defense counsel to disclose the report and must deny the government's Motion.

**IT IS THEREFORE ORDERED** that The United States' Motion to Compel Disclosure of Psychological Assessment [Doc. 64] is **DENIED.**

ENTERED this 22nd day of October 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

!
!